<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT FISCELLA, JR., *Plaintiff*, v. TOWNSHIP OF BELLEVILLE, WILLIAM GILBERT, KEVIN ESPOSITO, GIUSEPPE COFONE, GARY NOBILE, JOHN DOE(S) 1–10 (fictitious individuals presently unknown); and ABC CORP(S) 1–10 (fictitious corporations presently unknown), *Defendants*. | Civil No.: 2:16-cv-760 (KSH) (CLW)  <u>OPINION</u> |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

Plaintiff Vincent Fiscella alleges federal and state constitutional violations under 42 U.S.C. Section 1983 and Article I Paragraph 6 of the New Jersey Constitution and seeks statutory remedies under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq.  Defendants Township of Belleville, William Gilbert, Kevin Esposito, Giuseppe Cofone, and Gary Nobile have moved to dismiss the complaint (D.E. 2), pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.      Background**

For purposes of this motion, the Court accepts all allegations in the complaint as true. *See* Fed. R. Civ. P. 12(b)(6).

Belleville hired Fiscella as a laborer at the Department of Public Works ("DPW") on October 3, 2013.  (Compl. ¶ 8.)  Over the course of his employment at DPW, Fiscella reported

various maintenance issues to his supervisors regarding Belleville's garbage pick-up vehicles, specifying issues such as improperly functioning gear shifts, horns, breaks, lights, signals, four way flashers, pigtails,[1] windows, handles, and overall interior cleanliness.  (Compl. ¶¶ 19–22.)  Fiscella also reported "the deplorable conditions of certain work areas[,]" including "unkempt and filthy" bathrooms.  (Compl. ¶¶ 25–26.)

At some point, other Belleville employees learned that Fiscella was not supporting the reelection of Belleville Mayor Raymond Kimble.  (Compl. ¶ 12).  Although the exact timeline of events is unclear, in the months leading up to the May 2014 mayoral election, Fiscella claims he was alienated and harassed as a result of his political affiliation and "whistleblowing" complaints.  Specifically, he was: (1) forced to work the most undesirable jobs alone; (2) sent out on "emergency jobs" while other DPW employees held campaign strategy meetings for Mayor Kimble's reelection; (3) prohibited from using certain bathrooms; (4) forced (along with one other employee) to move his locker outside of the building next to a dumpster; and (5) subjected to "random" drug tests more frequently than other DPW employees.  (Compl. ¶¶ 13–18, 28–36.)

On May 5, 2014, Fiscella injured his back on the job, and was taken to a nearby hospital for immediate treatment.  He was told not to return to work until he had further medical follow-up.  (Compl. ¶¶ 37–39.)  After two follow-up appointments—one on May 7 and one on May 12—Fiscella was cleared to return to work with physical restrictions.[2]  (Compl. ¶¶ 40–43.)  Belleville attempted to find light duty work for him, but he was reluctant to return to work.  (Compl. ¶¶ 44, 47.)  Accordingly, on May 12, 2014, Gilbert, the DPW Superintendent, approved

---

[1] Pigtails are the coiled up portion of wire that connects the power from the front of a truck to the trailer.  *See* Fiscella's Opp. Br. (D.E. 4), at p. 7, n.1.

[2] Fiscella was told that he could not stand for greater than fifteen (15) minutes or push, pull or pickup anything over fifteen (15) pounds.  (Compl. ¶ 43).

Fiscella's use of sick time beginning May 13, 2014 up to and including Friday May 16, 2014. (Compl. ¶ 46.)

The first day of Fiscella's approved sick time, May 13, 2014, was Election Day in Belleville. Fiscella voted at the Belleville Senior Building, where Cofone, a DPW laborer, was using vacation time to volunteer on behalf of Mayor Kimble's campaign. (Compl. ¶¶ 49–51.) Cofone told Esposito, the Interim Township Manager, that he saw Fiscella at the Senior Building. (Compl. ¶¶ 52–53.) After he voted, Fiscella brought lunch to his wife at another polling site, the Little League Field House, where Nobile, another DPW laborer, was using his vacation time to volunteer on behalf of Kimble's campaign. (Compl. ¶¶ 55–56.) Nobile told Fiscella's superiors about seeing Fiscella there. (Compl. ¶¶ 57–58.) Based upon these reported sightings, Esposito and Gilbert drove to Fiscella's house and, "[i]n an effort to harass and cause [him] anxiety, . . . telephoned [him] from [his] own front door to interrogate [him] as to why he was not home." (Compl. ¶¶ 59–60.)

When Fiscella came back to work on Monday, May 19, 2014, Gilbert served him with a preliminary notice of disciplinary action ("PDNA") that immediately suspended him without pay and ultimately sought his termination. (Compl. ¶ 67.) Later that morning, Fiscella missed a scheduled follow-up appointment with his worker's compensation doctor "because he was upset after receiving the PDNA." (Compl. ¶¶ 70–72.) The next day, Belleville approved his request to convert his sick leave of May 13–16 to vacation time, which Fiscella made after receiving the first PDNA "in an effort to resolve the pending dispute and get back to work." (Compl. ¶¶ 73–74.) Shortly afterwards, Belleville issued another PDNA based on Fiscella's failure to show up for the May 19 doctor's appointment. (Compl. ¶ 75–78.)

After months of administrative activity, Belleville held a hearing on both PDNAs on October 31, 2014. (Compl. ¶¶ 79–89.) Ultimately, on January 29, 2015, Belleville issued a Final Notice of Discipline under which Fiscella was fired. (Compl. ¶93.)

Fiscella filed the instant action on January 22, 2016 alleging violations of his constitutional rights under 42 U.S.C. Section 1983 and Article I Paragraph 6 of the New Jersey Constitution; and invoking remedies under the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. (D.E. 1). In lieu of answer, Belleville and the named individual defendants jointly filed this motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.E. 2). Fiscella opposed (D.E. 4) and defendants filed a reply (D.E. 5).

The Court makes its decision on the papers.

**II.     Legal Standard**

Under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "detailed pleading is not generally required[,]" *see Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016), "the pleadings' factual content must independently permit the court to infer more than the mere possibility of misconduct." *Giurguis v. Movers Specialty Svcs.*, 346 Fed. Appx. 774, 776 (3d Cir. 2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability it stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). In making this determination, the Court "must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *New Jersey Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

**III.     Discussion**

    **A.  Federal Claim (42 U.S.C. § 1983)**

To state a claim under 42 U.S.C. § 1983, a plaintiff "must show that defendant, under the color of state law, deprived them of a federal constitutional or statutory right." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d. Cir. 2010); *see also Anderson v. Davila*, 125 F.3d 148, 159 (3d. Cir. 1997). Specifically, a plaintiff must "plead that each Government-official defendant, through his own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

    **1.  As to defendants Cofone and Nobile**

To satisfy the color of state law requirement, a plaintiff must show that the defendant "used authority derived from the state in causing the alleged harm." *Harvey v. Plains Twp. Police Dep't,* 421 F.3d 185, 189 (3d Cir.2005) (citing *Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir.1998)). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (U.S. 1988) (internal quotation omitted).

Although a public employee generally acts under color of state law "while acting in his official capacity or while exercising his responsibilities pursuant to state law[,]" *see West*, 487 U.S. at 49, "a state employee or officer whose purely private acts were not furthered by any actual or purported state authority will not be found to have acted under color of state law." *Showalter v. Brubaker*, 283 F. App'x 33, 35 (3d Cir. 2008) (citations omitted).

The complaint alleges that Fiscella's co-workers Cofone and Nobile reported seeing him at two polling sites. (Compl. ¶¶ 52–58.) There are no allegations that they had any say in

DPW's decision to suspend and ultimately fire him. It cannot be said that by simply reporting Fiscella's whereabouts they were exercising any power vested in them by state law. Moreover, the fact that when they reported seeing him at the polling sites they were using vacation time suggests that they were acting outside the scope of their employment. Thus, the complaint must be dismissed as to defendants Cofone and Nobile. *See Showalter v. Brubaker*, 283 F. App'x 33, 35 (3d Cir. 2008) (dismissing § 1983 claim against defendants where the complaint provided "no facts from which [the court] could reasonably infer that they invoked their state authority or otherwise attempted to exercise the power vested in them by state law[,]" and where the defendants "acted outside the scope of their state employment . . . .")

### 2. As to defendant Esposito

With respect to Esposito, the complaint alleges that on Election Day he drove to Fiscella's house and called him to ask why he was not at home on a sick day. (Compl. ¶ 60.) Although the complaint does not indicate whether Esposito was "on-duty" at the time, drawing all reasonable inferences in Fiscella's favor, the Court accepts that, as Interim Belleville Manager, Esposito was acting under color of state law when he visited Fiscella's house. However, to state a claim under 42 U.S.C. § 1983, Fiscella must further allege that Esposito deprive him of "a federal constitutional or statutory right." *Miller*, 598 F.3d at 147 (3d. Cir. 2010); *see also Anderson*, 125 F.3d at 159 (3d. Cir. 1997).

Fiscella is specific in his papers on this motion that the constitutionally protected activity around which his federal claim is formed is his right to vote. *See* Fiscella Opp. Br., at p. 13. Fiscella does not (and cannot) allege that Esposito's driving to his house and calling him to inquire as to his whereabouts on Election Day (which happened after he had voted) deprived him of his constitutional right to vote. Moreover, although Fiscella was told to report to Esposito's

office on the morning of his suspension, it was Gilbert who served him with the first PDNA. (Compl. ¶¶ 66–67.) *See Zaloga v. Borough of Moosic*, No. 15-2723 (3d Cir. Oct. 24, 2016) ("it has never been established that a government official who does not himself retaliate . . . can be held personally liable"). Thus, because there are no plausible allegations that Esposito deprived Fiscella of any constitutional rights, the complaint must be dismissed as to him. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (plaintiff must "plead that each Government-official defendant, *through his own individual actions*, has violated the constitution") (emphasis added).

### 3. As to defendant Gilbert

As Fiscella's immediate supervisor, Gilbert was acting with state-vested power when he suspended him. However, defendants argue that Fiscella fails to allege that the suspension was in any way causally related to his constitutional rights. *See* Moving Br., at p. 22. To establish a constitutional retaliation claim, a plaintiff must show: "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Id.* at 147. The causation element is established where the protected activity is a "substantial or motivating" factor in the retaliatory action. *Marrero v. Twp. of N. Bergen*, 2015 WL 4606683, at *4 (D.N.J. July 31, 2015) (McNulty, J.) (citing *Miller*, 598 F.3d at 147).

As noted above, in his papers on this motion, Fiscella is specific that the constitutionally protected activity around which his federal claim is formed is his right to vote. *See* Fiscella Opp. Br., at p. 13. Specifically, he alleges that his act of voting on Election Day was a "substantial or motivating" factor in Belleville's decision to suspend and ultimately terminate him.[3] (Compl. ¶ 112.)

---

[3] Although the complaint alleges at paragraph 112 that Fiscella's constitutionally protected activity in this case included visiting two polling sites, Fiscella concedes in his opposition brief that bringing his wife

The alleged facts are that Fiscella injured his back in the week leading up to Election Day. (Compl. ¶ 37.) After one hospital visit and two follow-up doctor's appointments, he received medical clearance to resume work with certain physical restrictions. Because he was still reluctant to return to work, he sought and received approval to remain out on sick leave for an additional three days. (Compl. ¶¶ 38–47.) On his first day of that extension of his sick leave—which coincided with Belleville's Election Day—Fiscella voted at one polling site and then visited another. Two DPW coworkers who were using vacation time to volunteer for Mayor Kimble's reelection campaign reported seeing him at the polling sites. (Compl. ¶¶ 52–53, 57–58.)

On his first day back at work, Fiscella was suspended without pay and informed that DPW intended to fire him. (Compl. ¶ 67.) He did not keep a follow-up appointment with his worker's compensation doctor, and as a consequence DPW issued a second disciplinary notice. Fiscella retroactively got approval to convert his sick time to vacation time. (Compl. ¶¶70–78.) Ultimately, he was fired after hearings on both disciplinary charges. (Compl. ¶ 93.)

The factual allegations of Fiscella's back injury, reluctance to return to work after receiving limited medical clearance, request for additional sick time, missed worker's compensation doctor's appointment, and retroactive request to convert the sick time to vacation time, are chronological events that fail to establish a *plausible* connection between voting on Election Day and getting fired. This is especially true when these same facts establish a straightforward basis for Fiscella's termination for showing up at two polling sites when he was supposed to be home sick despite having been cleared to go back to work. That he voted in the course of his excursions cannot, standing alone, establish plausibly that he was suspended and

---

lunch at the second polling site was not a constitutionally protected activity. *See* Fiscella Opp. Br., at p. 13 ("the constitutionally protected activity here is [Fiscella's] right to vote").

fired on account of casting his vote. Fiscella claims he was subjected to harassment in the workplace based on a difference of political opinion between him and other Belleville employees. Putting aside the problem that there are no factual assertions causally linking the asserted workplace difficulties to political differences, Fiscella specifically represented to the Court in his motion papers that his federal claim rests on DPW's retaliation against him because he exercised his right to vote. *See* Fiscella Opp. Br., at p. 13. As such, these allegations of workplace harassment implicate neither the alleged constitutionally protected activity (voting) nor the alleged retaliation (suspension and termination). Taking the allegations as true, Fiscella endured unpleasant assignments before exercising his constitutionally-protected right to vote on Election Day, which is at best barely consistent with—but not indicative of—section 1983 liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability it stops short of the line between possibility and plausibility."); *Davis v. City of Newark*, 2010 WL 4116975, at *2 (D.N.J. Oct. 18, 2010) (Brown, J.) ("A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible."), *aff'd,* 417 F. App'x 201 (3d Cir. 2011).

The Third Circuit has cautioned that courts "must be diligent in enforcing [section 1983's causation requirement] because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267–68 (3d Cir. 2007). Here, the complaint does not indicate the reasons Gilbert gave Fiscella for issuing the first disciplinary notice, leaving the Court to infer causation based solely on the notice's temporal proximity to Election Day. Fiscella admits that he failed to attend a scheduled worker's compensation doctor's appointment, which gave

rise to the second disciplinary notice without implicating a constitutionally-protected right. Fiscella does not suggest that the reasons given for his termination in the disciplinary actions were insufficient to support a termination. If the Court were to allow this action to proceed in the absence of allegations suggesting that Fiscella was suspended and fired <u>because he voted</u>, it would not be "diligently" enforcing section 1983's causation requirement consistent with the Third Circuit's mandate. *See Kundratic v. Thomas*, 407 F. App'x 625, 628 (3d Cir. 2011) (affirming dismissal of § 1983 retaliation claim based on "flimsy" causal nexus where "nothing suggests [defendants'] conduct was propelled by a retaliatory impulse"); *see also Warren v. Fisher*, 2013 WL 1164492, at *12 (D.N.J. Mar. 19, 2013) (Simandle, J.) (dismissing retaliation claim where the "pleadings suggest that Township Defendants' antipathy toward Plaintiffs' existed wholly independent of [plaintiff's alleged constitutionally-protected conduct]").

Simply put, Fiscella asks the Court to take inferential leaps that are impermissible under Rule 12(b)(6)'s plausibility standard. Thus, Fiscella's federal retaliation claim against Gilbert is dismissed.

### 4. As to defendant Belleville

Even if the complaint made out a plausible retaliation claim as to any of the individual defendants (which it does not), a municipality such as Belleville cannot be held liable for the acts of its employees on a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, a plaintiff must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation in order for there to be municipal liability." *Keahey v. Bethel Twp., Pa.*, 562 F. App'x 119, 122 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)).

"Policy is made when a 'decision maker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (quoting *Monell*, 436 U.S. at 690).

Fiscella argues that municipal liability is appropriate here because the allegations in the complaint "demonstrate a custom in [Belleville] whereby supporting Mayor Kimble is the only tolerated political expression." Fiscella's Opp. Br., at p. 20. To support the requisite custom, the complaint must allege facts from which the Court may reasonably infer that Belleville discriminates against political expressions contrary to Mayor Kimble in a manner that is "so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480. Although Fiscella's opposition papers do not direct the Court to any particular such allegations and leave the Court to sift through the complaint on its own, at its core, Fiscella's "custom" argument seemingly revolves around a vague allegation that during his employment, on some unknown date, at some unknown time, at some unknown place, some unknown Belleville employee or employees became aware that he did not support Mayor Kimble and he was subjected to unequal treatment as a result. (Compl. ¶ 12.)

There is no indication that the complained-of treatment in this case was in fact unequal, let alone supportive of a "permanent and well settled" custom of discrimination based upon political affiliation. *See Andrews*, 895 F.2d at 1480. Fiscella claims that he was forced to work "undesirable jobs" alone and sent out on "emergency jobs" during campaign strategy meetings, but does not suggest or allege that these undesirable tasks were outside the scope of his duties, or

that these emergency jobs were not in fact emergencies. He alleges that he was prohibited from using certain bathrooms, but does not suggest or allege that this prohibition applied only to those who did not support Mayor Kimble. He alleges that he was forced to move his locker outside next to a dumpster, but admits that another employee's locker was relocated in the same manner. And he alleges that he was "randomly" selected for drug tests more often than other employees who, "[u]pon information and belief were suspected substance abusers." (Compl. ¶¶ 13–18, 28–36.) Viewing all of these allegations in a light most favorable to Fiscella, the complaint fails to plausibly allege an "ongoing pattern" of discrimination based on political affiliation that rises to the level of custom. *See Peppers v. Booker*, 2012 WL 1806170, at *7 (D.N.J. May 17, 2012) (no custom found where "[p]laintiffs failed to present any factual assertions that would support the inference of an ongoing pattern of transferring officers based on their political preferences").

Moreover, even if such a custom did exist, Fiscella's claim against Belleville fails for the same reason it fails against Gilbert, namely, the lack of a "direct causal link between [the] custom and the alleged constitutional deprivation." *Keahey v. Bethel Twp., Pa.*, 562 F. App'x at 122 (quotation and citation omitted). As the Court has noted, the constitutionally protected activity around which Fiscella's federal claim is formed is his right to vote. To find that, after coming to an unsubstantiated revelation as to Fiscella's political affiliation, Belleville fired him because he voted on Election Day would be to pass beyond the realm of reasonable 12(b)(6) inferences and into a stratosphere of pure speculation. Accordingly, Fiscella's claim against Belleville is dismissed.

### B. State Law Claims

Supplemental jurisdiction allows federal courts to hear state law claims "when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998).

The district court has discretion to decline to exercise jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims." *Mattern v. City of Sea Isle*, 131 F.Supp.3d 305, 320 (D.N.J.2015); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action [is] eliminated at an early stage of the litigation, the District Court [has] a powerful reason to choose not to continue to exercise jurisdiction."). Accordingly, and given well established law on CEPA in the New Jersey courts, the Court will not entertain Fiscella's state law claims and they are dismissed.

### IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is **granted**, and the clerk of the court is direct to close this case. An accompanying Order will be filed.

s/ Katharine S. Hayden_____<br>
Katharine S. Hayden, U.S.D.J.

Dated: December 1, 2016